IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| AMERICAN RIVERS, IDAHO RIVERS UNITED, NATIONAL WILDLIFE FEDERATION, PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, and INSTITUTE FOR FISHERIES RESOURCES,<br><br>    Plaintiffs,<br><br> v.<br><br>NOAA FISHERIES, and UNITED STATES BUREAU OF RECLAMATION,<br><br>    Defendants,<br><br> and<br><br>DIRK KEMPTHORNE,[1] Governor of the State | CV-04-00061-RE<br><br>OPINION AND ORDER OF REMAND |

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), James E. Risch, Governor of Idaho, was substituted as defendant for Dirk Kempthorne, Former Governor of Idaho.

PAGE 1 – OPINION AND ORDER OF REMAND

of Idaho, STATE OF IDAHO, IDAHO WATER
USERS ASSOCIATION, COALITION FOR
IDAHO WATER, INC., PIONEER IRRIGATION
DISTRICT, SETTLERS IRRIGATION
DISTRICT, NAMPA and MERIDIAN IRRIGATION
DISTRICT, GEM IRRIGATION DISTRICT,
RIDGEVIEW IRRIGATION DISTRICT, OWYHEE
IRRIGATION DISTRICT, VALE IRRIGATION
DISTRICT, LOWER POWDER RIVER
IRRIGATION DISTRICT, BURNT RIVER
IRRIGATION DISTRICT, and OWYHEE DITCH CO.,

                Defendant-Intervenors.

REDDEN, Judge:

      In March 2005, NOAA Fisheries (NOAA) issued a biological opinion (2005upper SnakeBiOp) pursuant to the Endangered Species Act (ESA), which concluded that the U.S. Bureau of Reclamation's (BOR) operation of twelve federal projects on the upper Snake River—including BOR's annual provision of 487,000 acre-feet (kaf) of flow augmentation water—would not jeopardize the continued existence of any ESA-listed salmon and steelhead in the Snake and Columbia Rivers below those projects. Plaintiffs filed this suit, alleging, <u>inter alia</u>, the 2005upperSnakeBiOp's no-jeopardy conclusion was arbitrary and capricious because NOAA: 1) employed an improper analytical framework; and 2) improperly segmented BOR's upper Snake River projects (BOR projects) from the U.S. Army Corps of Engineers' and BOR's down-river Federal Columbia River Power System (FCRPS) operations for the purposes of ESA-consultation, resulting in two inadequate biological opinions, instead of one comprehensive opinion.

      On May 23, 2006, I issued an Opinion and Order granting in part and denying in part Plaintiffs' Motion for Partial Summary Judgment. I concluded that the 2005upperSnakeBiOp

PAGE 2 – OPINION AND ORDER OF REMAND

was arbitrary and capricious under the ESA because NOAA relied on the same flawed comparative jeopardy analysis the agency used in the 2004 Federal Columbia River Power System Biological Opinion (2004 FCRPS BiOp). More specifically, I found "NOAA's jeopardy analysis in the 2005upperSnakeBiOp did not consider the combined effects of the proposed action and the existing environmental baseline, and thus did not provide the comprehensive review that was required under the ESA." American Rivers v. NOAA Fisheries, No. 04-00061, Summary Judgment Opinion and Order, at 13 (D. Or. May 23, 2006). I also found that BOR's provision of 487 kaf of flow augmentation, by itself, did not require NOAA to consider the BOR projects and the FCRPS together in the "effects of the action" analysis of a single biological opinion. Id. at 18-26.

After considering and denying Plaintiffs' Motion for Reconsideration on the segmentation issue, I asked for and received proposals and comments from the parties regarding the structure and scope of the remand. On August 21, 2006, I directed the parties to confer and to submit a proposed schedule and remand order. The parties agreed to several remand order provisions, including quarterly reporting, commenting, and status conferences that will parallel the remand schedule in Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv. (NWF v. NMFS), CV 04-640-RE. The parties also agreed that the 2005upperSnakeBiOp should be left in place until the remand is complete.

The parties did not agree to a deadline for the completion of the Snake River BiOp. Federal Defendants reject Plaintiffs' suggestion that the action agencies advise the court how they plan to produce two separate biological opinions for the BOR Projects and FCRPS operations while ensuring the kind of comprehensive analysis required under the ESA. Plaintiffs

urge the court to require Federal Defendants to disclose "how the agencies will determine whether more than 487 kaf of flow augmentation water is necessary from the upper Snake to avoid jeopardy." Plaintiffs also seek an order directing NOAA to explain the specific steps they are taking to produce a comprehensive analysis in support of the two separate biological opinions. They ask for a description of: 1) the potential sources from which additional flow augmentation might be obtained; 2) specific additional mitigation measures available; and 3) the costs and sources of funding for acquiring additional flow augmentation.

Federal Defendants respond that the court is without authority to direct the agencies to address issues other than the flawed comparative analysis. See 5 U.S.C. § 706 (the court may "hold unlawful and set aside agency action . . . ."); Fed. Power Comm'n v. Idaho Power Co., 344 U.S. 17, 20 (1952) ("[T]he function of the reviewing court ends when an error of law is laid bare."). The agencies argue any further court instruction would impermissibly circumscribe agency discretion, violating Supreme Court precedent. See Gonzales v. Thomas, 126 S. Ct. 1613, 1615 (2006) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." (quoting Immigration and Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002)). Federal Defendants acknowledge that the history of failed FCRPS BiOps provided the court with "substantial justification" for a detailed remand order in NWF v. NMFS. See Fed. Power Comm'n v. Transcontinental Gas Pipe Line Corp., 423 U.S. 326, 333 (1976) (holding in the absence of "substantial justification," a court should not dictate "the methods, procedures, and time dimension" of an administrative remand). They argue, however, that because this is the first remand of a biological opinion for the upper Snake River projects, the court does not have "substantial justification" for issuing a similarly detailed

remand order.

I disagree that there is no "substantial justification" for issuing a more detailed remand order here, if necessary. Although this is the first deficient upper Snake River biological opinion, it is not the first time NOAA has failed to produce a valid biological opinion for Snake River salmon and steelhead. In fact, NOAA, BOR, the Corps, and BPA have repeatedly and collectively failed to demonstrate a willingness to do what is necessary to "halt and reverse the trend towards species extinction [in both the Columbia and Snake River Basins] whatever the cost." Tennessee Valley Authority v. Hill (TVA v. Hill), 437 U.S. 153, 184 (1978); see e.g., Idaho Dep't of Fish and Game v. Nat'l Marine Fisheries Serv. (IDFG v. NMFS), 850 F. Supp. 886 (D. Or. 1994); Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv., 254 F. Supp. 2d 1196 (D. Or. 2003); Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv., No. 01-640, 2005 WL 1278878 (D. Or. May 26, 2005).

I will not ignore the history of Federal Defendants' noncompliance with the ESA in the Columbia and Snake River Basins simply because the federal action agencies chose to segment the Snake River system and to produce two biological opinions. The Federal Defendants have long recognized the need for a unified, basin-wide approach to salmon recovery in the Snake and Columbia Rivers. They decided to segment the Snake River system from the Columbia River system not to halt the decline of ESA-listed salmon and steelhead in the Snake River, but to fulfill the terms of the Snake River Basin Adjudication Agreement (SRBA Agreement) with Idaho, the Nez Perce Tribe, and Snake River Irrigators. That agreement was designed to guarantee water to specific users in the upper Snake River despite evidence that ESA-listed Snake River salmon and steelhead populations were declining due, in part, to already insufficient

water flows from the upper Snake River.[2]  Indeed, the BOR Projects in the upper Snake River reduce annual flows in the lower Snake and Columbia Rivers by two million acre-feet, which contributes to salmon mortality by adversely affecting the quality of salmon habitat, increasing water temperatures, impacting water quality, and interrupting juvenile salmon migration in the river below the upper Snake River projects.  For those reasons, flow augmentation from the upper Snake River has been a mitigation feature in every FCRPS biological opinion for ESA-listed salmon in the Columbia River Basin.

Even though the record indicates that more flow augmentation than that allowed by the SRBA Agreement will be required to avoid jeopardy in the upper Snake River, Federal Defendants seem unwilling to consider flow mitigation measures beyond the 487 kaf flow augmentation available under the agreement.[3]  Indeed, Federal Defendants argue that the SRBA

---

[2] Historically, the Snake River Spring/Summer Chinook Salmon spawned in virtually all accessible and suitable habitats in the Snake River system. During the late 1880s, total Snake River adult production probably exceeded 1.5 million in some years.  From 1997 to 2001, however, the mean return of natural-origin Snake River Spring/Summer Chinook Salmon was about 3,700 fish.  Approximately 114 to 732 naturally-produced adult Snake River Fall Chinook returned annually from 1985 through 1993.  In 2001, an estimated 2,600 Fall Chinook classified as natural origin  returned to spawn.  Only 16 naturally-produced adult Snake River Sockeye have returned to their historical spawning grounds since the species was listed as endangered in 1991.  In the 2005 FCRPS BiOp, NOAA concluded that Snake River salmon's safe passage would be impaired partly because of reduced flow.  See Nat'l Wildlife Fed'n v. Nat'l marine Fisheries Serv., No. 01-640-RE, 2005 WL 1278878, at 23-26 (D. Or. May 26, 2005).

[3] NOAA estimates that the minimum amount of flow augmentation required to mitigate the streamflow depletions caused by the BOR Projects would total 1.05 million acre-feet (maf). 2004 NMFS AR Doc. C.15; see also 2004 NMFS AR Doc. C.20 at 2 (noting the provision of 427 kaf of flow augmentation from the upper Snake projects "should not be construed as providing Section 7 coverage for those projects. . . . contribution to offsite mitigation for the FCRPS projects would have to be above and beyond any measures necessary for the operations of the upper Snake projects to comply with the ESA."); and NOAA AR B.59 at 99 (1995 FCRPS BiOp's requirement that BOR investigate acquiring an additional 1.5 maf for flow

PAGE 6 – OPINION AND ORDER OF REMAND

Agreement defines and proscribes the scope of the proposed federal action in the upper Snake River.  Federal Defendants contend Congress mandated the SRBA Agreement, so BOR has no legal authority to provide or acquire additional flow augmentation from the upper Snake River.

Federal Defendants appear to be more concerned with ensuring that the upper Snake River consultation does not interfere the terms of the SRBA Agreement than ensuring that the BOR Projects do not jeopardize ESA-listed salmon and steelhead in the upper Snake River.  Stated somewhat differently, "[i]nstead of looking for what <u>can</u> be done to protect the species from jeopardy, [NOAA] and the action agencies [appear to be] narrowly focus[ing] their attention on what the establishment is capable of handling with minimal disruption."  <u>IDFG v. NMFS</u>, 850 F. Supp. at 900 (emphasis in original).

Although the issue is not squarely before the court, Federal Defendants' position appears to be inconsistent with the Supreme Court's admonition that the ESA reflects Congress' explicit "decision to require agencies to afford <u>first priority</u> to the declared national policy of saving endangered species."  <u>TVA v. Hill</u>, 437 U.S. at 185 (emphasis added).  The Supreme Court made clear that the language, structure, and history of the ESA reveals "a conscious decision by Congress to give endangered species priority over the 'primary missions' of federal agencies."  <u>Id</u>.  Federal Defendants' argument also appears to be a variation on their previous argument concerning "discretionary" versus "non-discretionary" actions in the 2004 FCRPS BiOp litigation—an argument that this court specifically rejected.  See <u>Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.</u>, CV 01-640, 2005 WL 1278878, at *7-11 (D. Or. May 26, 2005).

While I am concerned by  Federal Defendants' present position regarding the SRBA

---

augmentation).

PAGE 7 – OPINION AND ORDER OF REMAND

Agreement, I am also confident that these experienced action agencies can produce the two separate comprehensive biological opinions we all seek.  The past, however, tells me that none of us—especially the threatened and endangered Snake River salmon and steelhead—can afford the dire consequences that will follow from another failure.  Given those concerns and this court's "broad latitude in fashioning equitable relief," Alaska Center for the Environment v. Browner, 20 F.3d 981, 986 (9th Cir. 1994), I may well direct the federal agencies to consider certain steps during the remand if they are necessary to ensure that the upper Snake River BiOp complies with the ESA's substantive requirements.  See Thomas v. Peterson, 753 F.2d 754, 764 (9th Cir. 1985) ("the strict substantive provisions of the ESA justify more stringent enforcement of its procedural requirements, because the procedural requirements are designed to ensure compliance with the substantive provisions.") (emphasis in original).

In their first status report, Federal Defendants will detail specific steps they plan to take to ensure the kind of comprehensive analysis required by the ESA—*i.e.*, a comprehensive analysis consistent with my May 23, 2006 Opinion and Order, which considers the combined effects of the BOR Projects and the FCRPS operations on ESA-listed salmon and steelhead.  In subsequent status reports, Federal Defendants will provide updates, describing specific steps they are taking to produce a comprehensive analysis in support of separate biological opinions.  These reporting requirements do not impermissibly inject the court into the agencies' deliberative process.  Nor do they dictate the substance or procedure of the biological opinion.  The court is simply ordering Federal Defendants to provide the court and the parties with updates relating to the action agencies' plans to correct the legal flaws identified in my May 23, 2006 Opinion and Order.

I should not, and will not now specifically order NOAA to describe "how the agencies will determine whether more than 487 kaf flow augmentation is necessary from the upper Snake River to avoid jeopardy." Nor will I now order Federal Defendants to examine and describe potential sources of additional flow, the costs and sources of funding for additional flow, or any possible additional mitigation measures the agencies must include in the proposed action. Such an order directing a separate examination of that issue would exceed my present remand authority and may be unnecessary. The action agencies are already required to examine whether the provision of 487 kaf flow augmentation—as part of its proposed action—will contribute to or avoid jeopardy in the revised biological opinion itself.

If NOAA finds that the 487 kaf flow does not avoid jeopardy, the ESA requires them to address reasonable and prudent alternative actions (RPA) that are <u>reasonably certain to occur</u> in order to mitigate the jeopardy and support an ultimate "no jeopardy" opinion.[4] If the court finds the RPA measures are not reasonably certain to occur, or that the upper Snake River BiOp on remand is otherwise legally deficient, the court will not allow another invalid biological opinion to remain in place during the pendency of yet another remand. In that event, Federal Defendants and other water users in the Columbia and Snake River Basins could be exposed to liability for taking listed species under Section 9 of the ESA. Given the precarious condition of the Snake River salmon and steelhead runs, the consequences of another failed biological opinion will be serious indeed.

Based on the above, I ORDER the 2005upperSnakeBiOp be remanded to NOAA to make

---

[4] Notably, since 1995 BOR failed to provide the full quantity of annual flow augmentation called for by the FCRPS BiOps. Indeed, BOR admits that there is only a 50/50 chance that it will provide the 487 kaf flow augmentation called for by the 2005upperSnakeBiOp.

PAGE 9 – OPINION AND ORDER OF REMAND

a jeopardy determination that complies with the requirements of the ESA and to correct the legal flaws identified in my May 23, 2006 Opinion and Order. I will not order NOAA to combine Section 7 consultations for the BOR Projects and the FCRPS operations. Nor will I specifically direct the agency to issue separate biological opinions. That decision lies within the agency's discretion. The agencies, however, must integrate their analysis to produce the kind of comprehensive analysis required by the ESA. If, at any time during the remand, it becomes apparent that Federal Defendants are unwilling to comply with that directive, the court will not hesitate to consider modifying this order of remand.

Subject to any further orders from the court, I hereby remand the 2005upperSnakeBiOp to NOAA with the following instructions:

(1) The 2005upperSnakeBiOp will remain in place during the pendency of this remand.

(2) The court remands the 2005upperSnakeBiOp to NOAA to apply the standards of ESA § 7 to BOR's proposed action for the upper Snake River projects and to correct the legal deficiencies identified in this court's May 23, 2006 Opinion and Order.

(3) Federal Defendants shall complete the upper Snake River BiOp on remand no later than four months following the completion of the FCRPS remand. If warranted, the court may grant Federal Defendants an extension of time provided that significant progress is being made and will continue to be made.

(4) Federal Defendants shall submit quarterly status reports that detail the progress being made is the upper Snake River remand. Federal Defendants will file their status reports on the same day as the status reports in the FCRPS remand. Any party or *amici* shall have five days to

file comments on the status reports. The comments shall be two pages or less in length and shall be designed for the purpose of assisting the court and parties in narrowing the issues to be addressed during the status conferences. These comments should not be used to object to Federal Defendants' reports. The court will hold status conferences to address issues raised by the status reports on the same day as, and immediately following conclusion of the FCRPS status conferences.

(5) On October 3, 2006, Federal Defendants shall file their first status report setting out its progress to date toward producing a comprehensive analysis consistent with ESA and this court's May 23, 2006 Opinion and Order.[5] This status report shall include a description the specific steps the action agencies are taking or plan to take to ensure that the federal agencies will conduct the kind of comprehensive analysis required under the ESA while producing separate biological opinions for the BOR Projects and the FCRPS operations. In their subsequent quarterly status reports, Federal Defendants shall provide the court with updates, describing the specific steps they are taking to produce a comprehensive analysis in support of separate

---

[5] I understand that October 3, 2006 is quickly approaching and Federal Defendants may not be able to provide the court with a detailed status report by that date. I do, however, expect Federal Defendants to make some effort to describe the steps they are taking or plan to take toward producing the comprehensive analysis required by the ESA. Federal Defendants may be somewhat constrained by this deadline, but I would like to hear some preliminary thoughts on how they plan to integrate their analyses of the FCRPS operations and the BOR Projects. If need be, I may allow the parties time to file a more detailed status report and comments in November.

PAGE 11 – OPINION AND ORDER OF REMAND

biological opinions.  If, at any time during the remand, NOAA concludes that the action agencies are not making sufficient progress in developing a comprehensive analysis, NOAA shall immediately advise the court of those circumstances.

    IT IS SO ORDERED.

    DATED this <u>26th</u> day of September, 2006.

<div style="text-align:right">
<u>/s/ JamesA. Redden</u><br>
James A. Redden<br>
United States District Judge
</div>